**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY JACKSON, | ) | CASE NO. 3:18-cv-113 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| JEFF NOBLE, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Zachary Jackson (hereinafter "Petitioner" or "Jackson"), challenges the constitutionality of his conviction in the case of *State v. Jackson*, Sandusky County Court of Common Pleas Case No. 2014-CR-420. Petitioner, represented by counsel, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Respondent, Warden Jeff Noble, ("Respondent") filed an Answer/Return of Writ. (R. 9). Petitioner filed a Traverse, (R. 10), to which Respondent filed a surreply. (R. 11). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Sixth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 1} Appellant, Zachary Jackson, appeals from his conviction in the Sandusky County Court of Common Pleas on one count of aggravated burglary, one count of burglary, one count of domestic violence, one count of violating a protection order, and one count of rape. For the reasons that follow, we affirm.

> {¶ 2} A trial commenced on March 17, 2015. The victim testified that she lives in an apartment with her young son. Appellant is her son's father. She has known appellant for six years. She briefly lived with appellant. In February of 2014 she filed a civil protection order against appellant. On May 12, 2014, appellant sent the victim a text message asking her if he could come over. The victim told him no. They continued to exchange angry text messages with each other.

> {¶ 3} The victim testified that later, appellant kicked in her front door and ran upstairs to her apartment. He kicked furniture and then knocked her on the ground and started hitting her in her face and head. She began bleeding from her nose and her cut lip. Appellant then put her in a chokehold and demanded that she get in the shower to wash off the blood. After the shower, appellant made her lie on her bed. He held her down and vaginally raped her despite the fact that the victim was crying and asked him to stop.

> {¶ 4} After appellant left, the victim called a friend who took her to the hospital. Detective Jason Kidde met the victim at the hospital. He described her as being very upset; displaying facial injuries, bruising on her arms and marks around her neck. Detective Kidde then went to the victim's apartment. Her door was damaged and there was blood on her carpet. He also found blood on her clothes and on some bathroom towels. When Detective Kidde asked appellant about the May 12 incident, appellant claimed he had consensual sex with the victim.

> {¶ 5} A jury found appellant guilty on all counts. He was sentenced to serve an aggregate prison term of 11 years.

*State v. Jackson*, 2016-Ohio-3278 at ¶¶ 1-5, 2016 WL 3127517 (Ohio Ct. App. Ju. 3, 2016).

## II. Procedural History

### A.   Conviction

On May 21, 2014, a Sandusky County, Ohio grand jury charged Jackson with one count of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(1), one count of burglary in violation of O.R.C. § 2911.12(A)(1), one count of domestic violence in violation of O.R.C. § 2919.25(A) with a prior domestic violence conviction specification, one count of violating a protection order in violation of O.R.C. § 2919.27(A)(1), and one count of rape in violation of O.R.C. § 2907.02(A)(2). (R. 9-1, PageID# 52-54).

Petitioner, represented by counsel, pleaded not guilty. (R. 9-1, PageID# 55). Prior to trial, Petitioner filed a motion to dismiss the domestic violence charge along with the corresponding prior conviction specification. (R. 9-1, PageID# 56-59). In response, the State filed a motion to amend count three of the indictment—the domestic violence charge—to a first-degree misdemeanor in violation of O.R.C. § 2919.25(A) and removing the prior conviction specification. (R. 9-1, PageID# 62-63), which the trial court granted. (R. 9-1, PageID# 64).

After a jury trial, on March 18, 2015, the jury found Jackson guilty as charged. (R. 9-1, PageID# 74-82).

Prior to sentencing, Petitioner filed a motion for a new trial alleging improper communications between a witness, police detective Jason Kiddey, and several jurors. (R. 9-1, PageID# 83-93). The trial court denied the motion for new trial on April 15, 2015. (R. 9-1, PageID# 101).

Prior to sentencing, Attorney Daniel G. Wightman filed a notice of substitution of counsel for Jackson. (R. 9-1, PageID# 107).

At the July 2, 2015, sentencing hearing, Petitioner, through new counsel, made an oral

3

motion for acquittal under Ohio Crim. R. 29, or alternatively a motion to find Jackson guilty of a sexual battery rather than rape, further arguing the convictions constituted allied offenses that should merge. (R. 9-1, PageID# 111-113). For sentencing purposes, the trial court merged the aggravated burglary, burglary, domestic violence, and violating a protection order convictions, while indicating the rape conviction would remain separate. *Id*. It denied Ohio Crim. R. 29 motions and request to reduce the rape conviction to sexual battery. *Id*. Petitioner was sentenced to eleven years in prison for the aggravated burglary conviction and eleven years in prison for the rape conviction, but the sentences were to be served concurrently for an aggregate sentence of eleven years in prison. *Id*. The trial court also adjudicated Jackson a Tier III Sex Offender and notified Jackson of his sex offender registration duties. (R. 9-1, PageID# 112-115).

**B.    Direct Appeal**

On July 30, 2015, Petitioner, through counsel, filed a Notice of Appeal with the state appellate court. (R. 9-1, PageID# 116). On December 10, 2015, Petitioner raised the following assignments of error:

> 1.    The trial court violated the appellant's right to due process guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio and committed plain error by failing to instruct the jury on all elements of the offense of violation of a protection order pursuant to R.C. 2919.27.
>
> 2.    The appellant's conviction for rape was against the manifest weight of evidence.
>
> 3.    The trial court committed plain error in not instructing the jury on sexual battery under R.C. 2907.03(A)(l) as a lesser included offense to rape.
>
> 4.    The appellant was denied effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendment to the Constitution of the United States and Article I, Section 10 of the Constitution of the State of Ohio when counsel failed to object to the jury instruction for violating a protection order under R.C. 2919.27 that failed to instruct the jury on all elements of

> the offense and by failing to request a jury instruction on the lesser
> included offense of sexual battery under R.C. 2907.03(A)(l) on the charge
> of rape.

(R. 9-1, PageID# 122-125, Exh. 17).

On June 3, 2016, the state appellate court considered all assignments of error and affirmed

the judgment of the trial court. (R. 9-1, PageID# 159-167).

On July 15, 2016, Petitioner, through counsel, filed a notice of appeal with the Ohio

Supreme Court. (R. 9-1, PageID# 168-169). Petitioner raised the following propositions of law:

> 1.  An incomplete jury instruction on the offense of violating a protection
>     order under RC. 2919.27, that did not instruct the jury on the element
>     of service of the order on the defendant, was plain error when the defendant
>     denied knowledge of the protection order and the state failed to prove
>     actual delivery of the protection order to the defendant.
>
> 2.  A defendant is denied effective assistance of counsel guaranteed by the
>     Sixth and Fourteenth Amendments to the Constitution of the United States
>     and Article I, Section 10 of the Constitution of the State of Ohio when
>     counsel fails to object to a jury instruction for violating a protection order
>     under RC. 2919.27 that did not instruct the jury on the element of service
>     of the protection order when the defendant denies actual knowledge of the
>     order and the state failed to prove actual service of the order on the
>     defendant.

(R. 9-1, PageID# 171).

On October 26, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal

pursuant to S. Ct. Prac. R. 7.08(B)(4). (R. 9-1, PageID# 198).

**C.  Federal Habeas Petition**

On January 16, 2018, Petitioner, through counsel, raised the following ground for relief:

> GROUND ONE: The claim for relief asserts that Petitioner's convictions were
> against the manifest weight of the evidence and that he is actually innocent.

(R. 1, PageID# 4).

### III. Review on the Merits[1]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.   *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404

F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.

Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

---

[1] Respondent asserts that ground one was not fairly presented to the state courts and is
unexhausted (R. 9, PageID# 36; R.11, PageID# 786). This court, however, addresses ground one
on the merits to the extent it raises a cognizable claim. The United States Supreme Court has
observed that federal courts are not required to address a procedural default issue before deciding
against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137
L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default
question is complicated and unnecessary to the court's determination of the case. *See Bales v.
Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing
the merits rather than seeking to resolve complicated issues of state law).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.  Ground One: Manifest Weight of the Evidence**

In his sole ground for relief, Petitioner argues that his convictions were against the manifest weight of the evidence. (R. 1, PageID# 4-6). Respondent argues that a manifest-weight claim is not cognizable on habeas review. (R. 9, PageID# 40-42).

It is well-settled that claims regarding the manifest weight of the evidence are grounded in state law and are therefore not cognizable on federal habeas review. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt); *see also Nash v.*

*Eberlin*, 258 Fed. Appx. 761, 765 n.4 (6th Cir. 2007); *Nash v. Eberlin*, 437 F.3d 519, 522 (6th Cir. 2006); *accord Gibson v. Miller*, No. 5:15CV119, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27, 2016) ("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims"); *Nelson v. Sheldon*, No. 7CV2428, 2019 WL 3043890, 2019 U.S. Dist. LEXIS 88015, *46 (N.D. Ohio, Jan. 31, 2019) (Greenberg, M.J.) (same). Petitioner's Traverse does not acknowledge the above authority, even after the issue was raised in the Return of Writ. The court, therefore, finds that Petitioner' s manifest weight of the evidence claim fails to present a cognizable claim on federal habeas review. *Kelly v. Collins*, 2020 WL 5000062 at *6 (6th Cir. June 26, 2020) ("Reasonable jurists could not debate the district court's rejection of this [manifest weight of the evidence] claim because it presents an issue of state law that is not cognizable on federal habeas review.")

The court, however, liberally construes the habeas petition as also raising a sufficiency of the evidence claim. *See, e.g., Nash*, 258 Fed. Appx. at 765 n.4. When addressing a sufficiency of the evidence claim, the United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original). "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365,

2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703

F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state

court's factual determinations and "[a]ny conflicting inferences arising from the record,

including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*,

1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to

the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas
> proceedings because they are subject to two layers of judicial deference.  First,
> on direct appeal, "it is the responsibility of the jury--not the court--to decide what
> conclusions should be drawn from evidence admitted at trial.  A reviewing court
> may set aside the jury's verdict on the ground of insufficient evidence only if no
> rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
> 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on
> habeas review, "a federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal court disagrees
> with the state court. The federal court instead may do so only if the state court
> decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). "AEDPA and *Jackson* together create two

layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from

the evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the

evidence claim." *Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016)

(internal citations omitted).

Petitioner asserts that the rape conviction cannot stand because the sexual intercourse

between him and the victim was consensual, and that the violation of a protective order

conviction cannot stand because there was no proof he was served with the order. (R. 1, PageID#

4-5). Petitioner makes no argument with respect to the aggravated burglary and domestic

violence convictions; consequently, the court deems any argument on those convictions waived.

With respect to the challenge to the rape conviction, the state appellate court found no merit to

Petitioner's claims, explaining as follows:[2]

> [*P14] In his second assignment of error, appellant contends that his conviction for rape was against the manifest weight of the evidence.

> [*P15] With respect to the manifest weight of the evidence, a reviewing court questions "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" *State v. Group*, 98 Ohio St. 3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 77, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (10th Dist. 1983). The appellate court considers all of the evidence, sits as a "thirteenth juror," and decides whether a greater amount of credible evidence supports an acquittal such that the jury "clearly lost its way" in convicting the appellant. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997).

> [*P16] R.C. 2907.02(A)(2) provides: [N]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

> [*P17] Appellant's evidentiary argument centers upon the credibility of the victim. He contends her behavior and testimony were inconsistent with that of a rape victim. First, he notes that the victim never stated that appellant physically forced her to have sex. The victim acknowledged that she did not try to get up from the bed but only because appellant was stronger than her and he had already beaten her. She testified she told him no and that the entire time, she was crying. When she initially was interviewed by Detective Kidde, she told him the sex was consensual because "she was scared." She later told Kidde that she had sex with appellant hoping he would then leave. The nurse who conducted the sexual assault exam on appellant testified that she saw no visible internal injuries on the victim but that is not unusual. She testified: "[i]n my experience there are times you don't see injuries when you know this was not a consensual event." The nurse testified that the victim had been severely beaten.

---

[2] The Sixth Circuit has explained that a "sufficiency of the evidence issue" is "adequately passed upon by the Ohio courts" where there is a "determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight," because such a finding "necessarily implies a finding that there was sufficient evidence." *Nash*, 258 Fed. Appx. at 765.

[*P18] At trial, the victim stated that she told appellant that she did not want to have sex and that she told him to stop. This occurred after he had already broken into her home and physically assaulted her. In choosing to believe the testimony of the victim, we cannot say that the jury, as the trier of fact, lost its way or that the result was a manifest miscarriage of justice. Appellant's second assignment of error is found not well-taken.

*State v. Jackson*, 2016-Ohio-3278 at ¶¶ 14-18.

Petitioner argues that there was insufficient evidence of rape because the victim testified that she had sex with Petitioner so that he would leave. (R. 10, PageID# 779). Petitioner's selective citation of the evidence from trial does not render his conviction the result of insufficient evidence. The victim testified that she had obtained a domestic violence civil protection order against Petitioner in March of 2014—several months prior to the events of May 12, 2014, that lead to the rape conviction against Petitioner. (R. 9-2, Tr. 248-251). The victim testified Petitioner began calling her at 3 a.m. (Tr. 253-258). The Petitioner persisted calling. (Tr. 260-261). She stated Petitioner wanted to "come over" and she cussed at him in response and hung up the phone. (Tr. 258). The Petitioner texted the victim, to which she responded by writing: "I hate you more than anyone else in this world." (Tr. 266). She testified that Petitioner came over to her apartment uninvited and kicked in the front door. (Tr. 270). She then testified Petitioner ran up the steps and kicked the baby gate open causing it to break free from where it was screwed to the wall. (Tr. 270-271). The victim then testified that petitioner "pushed me down on the ground and started hitting me in the head and in the face." (Tr. 273). She blacked out and awoke bleeding from her nose and lip. (Tr. 274). She further testified that Petitioner noticed her crawling and placed her in a choke hold. (Tr. 275). Petitioner led the victim to the shower and turned it on, and started to undress the victim while she was crying. (Tr. 276). The

11

victim testified that Petitioner instructed her to go the bedroom and would not let her get dressed.

(Tr. 276-277). She further testified as follows:

> Q:     He told you to do what?
>
> A:     He told me to get on the bed and lay down.
>
> Q:     Did you?
>
> A:     I couldn't lay down my head hurt so bad.
>
> Q:     Then what happened?
>
> A:     He put both of my arms over the top of my head and made me lay down.
>
> Q:     Did he push you down or what?
>
> A:     Yes.
>
> Q:     And he put your hands where?
>
> A:     Above my head.
>
> Q:     Did they stay there, did your hands stay there?
>
> A:     Yes.
>
> Q:     How?
>
> A:     He was holding them with one of his hands.
>
> ***
>
> Q:     What did he say to you?
>
> A:     He said that I give it to every other man but I will never give it to him and he was mad and I was just crying. I couldn't stop crying. I was in so much pain. My face hurt, my head hurt, and then he spit on his hand and rubbed it down there.
>
> Q:     Rubbed it down where?
>
> A:     Down by my vagina.
>
> Q:     Okay. Did he -- then what happened?

12

A:      Then he put it in.

Q:      Where did he put it hand that he spit on?

A:      He put it down towards my vagina and rubbed it.

Q:      Your vagina?

A:      Yes, rubbed it down there to lubricate it.

Q:      What happened next?

A:      Then he put his penis in.

Q:      He put his penis where?

A:      In my vagina.

Q:      Then what happened?

A:      I was crying and he told me he just wanted the best.

Q:      Which means what?

A:      Ejaculate. I told him that I didn't want it, I told him no and he kept going and I was crying and he told me to stop crying because it made him feel like he was raping me.

Q:      And then what?

A:      I told him I couldn't stop, I just cried and he eventually ejaculated, he pulled out.

                                                ***

Q:      Back when he was on top of you on the bed, did you try to get up?

A:      Uhm, no.

Q:      Why not?

A:      Because he is a lot stronger than I am. How am I supposed to get a man off the top of me and run and get my son and make it out of my upstairs apartment before he is back up to get me.

> Q:      So you said you were scared?
>
> A:      Yes.

(Tr. 277-279; 282). On cross-examination and re-direct examination, the victim acknowledged telling Detective Kidde the sex was consensual, but stated she was scared at the time. (Tr. 325; 339-40). The victim further testified—in response to defense counsel's cross-examination that she told petitioner "No" when he was initiating sexual contact—in the following exchanges:

> Q:      You didn't tell [Petitioner] no?
>
> A:      I did tell [Petitioner] no.
>
> Q:      When?
>
> A:      When he was putting my hands over my head.

(Tr. 324)

> Q:      You didn't tell him no when the sex started?
>
> A:      Yes, I did. I said that twice already.

(Tr. 332).

The jury plainly credited the testimony of the victim, from which the jury could reasonably   conclude that Petitioner "engage[d] in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." O.R.C. §2907.02(A)(2). Petitioner's argument that there was no force or threat of force conveniently ignores the violent sequence of events leading up to the rape, as well as the victim's testimony that Petitioner prevented her from getting dressed, pushed her down onto the bed, held her hands over her head and held them there while she was crying and said "no." While Petitioner points out that the victim had made inconsistent statements to police suggesting the sex was consensual,

the jury heard that testimony and clearly believed that the victim was testifying truthfully at trial. This court may not weigh the credibility of witnesses on habeas review.

In addition, Petitioner misstates the SANE nurse's testimony in suggesting that internal injuries are to be expected if the sexual encounter was not consensual. (R. 1, PageID# 4). To the contrary, the nurse testified that she "didn't see acute injury, but that's not uncommon." (Tr. 197). She explained that in her experience "there are times when you don't see injuries" even where the intercourse was not consensual. (Tr. 198). Further, such medical evidence is unnecessary to sustain a rape conviction. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 658-659 (6th Cir. 2008) ("[T]his Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction.") (*citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty.")); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *Williams v. Bauman*, 2015 U.S. App. LEXIS 23149 (6th Cir. Jan. 30, 2015) (finding the victim's testimony was sufficient to sustain defendant's convictions); *cf. Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) ("Circumstantial evidence alone is sufficient to support a conviction, and [i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.") (internal citations and quotation marks omitted).

Based on the victim's testimony that Petitioner violently assaulted her before making her

get undressed, that he pushed her down onto the bed, and that she told him no, this court cannot find that the state appellate court's decision was objectively unreasonable when applying the "double deference" required under the AEDPA. Accordingly, Petitioner's sufficiency of the evidence claim with respect to the rape conviction is without merit.

Petitioner also asserts that there was insufficient evidence to sustain the conviction for violating a protective order because there was reasonable doubt as to whether Petitioner was served with the protection order. (R. 1, PageID# 6). The state appellate court addressed Petitioner's related service argument as follows:

> [*P10] In support of his assignment of error, appellant cites *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972. In that case, the Supreme Court of Ohio stated: "[t]o sustain a conviction for a violation of a protection order pursuant to R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation."

> [*P11] At trial, Sandusky County sheriff's deputy, Mario Cavillo, identified exhibit No. 62 as a receipt indicating that Deputy Cavillo served the protection order on appellant on February 28, 2014 at 4:32 p.m. Cavillo also identified the handwriting as his own, although he had no personal recollection of actually serving appellant.

> [*P12] Sandusky County Clerk of Courts, Tracy Overmyer, identified exhibit No 61 as a return of service sheet she, as clerk of courts receives, confirming that service has been perfected on a respondent. Exhibit No. 61 shows that on February 28, 2014, Deputy Mario Cavillo personally served the protection order on appellant.

> [*P13] It is undisputed that the trial court made no mention of service or delivery when instructing them on the elements of the offense. However, given the above testimony, we cannot say that the outcome of his trial would have clearly been different but for the trial court's omission. Appellant's first assignment of error is found not well-taken.

*State v. Jackson*, 2016-Ohio-3278 at ¶¶ 10-13.

Neither the petition nor traverse makes any meaningful argument challenging the state appellate court's findings. At trial Deputy Cavillo testified that he served Petitioner with the

16

Civil Protection Order, while acknowledging that he did not have independent recollection of serving Petitioner as he has served countless such orders over the years. (R. 9-2, Tr. 364, 368-369). Deputy Cavillo recognized his handwriting on the form and affirmatively testified that "if I filled that out, then I served it." (Tr. 371). In response to defense counsel's suggestion that a year before the trial the local rules did not actually require personal service, Deputy Cavillo disputed that assertion and stated that they always personally served the individual. *Id.* Based on the above testimony and again applying the "double deference" required under the AEDPA, the court cannot find that the state appellate court's decision was contrary to clearly established federal law.

Finally, Petitioner suggests that he is actually innocent. (R. 1, PageID# 6). As observed in a recent opinion from another court in this district:

> The Sixth Circuit, however, has repeatedly held that actual innocence is not cognizable as a free-standing habeas claim, particularly in the context of non-capital proceedings. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). *See also Thomas v. Perry*, 553 F. App'x 485, 486 (6th Cir. 2014) ("Thomas' freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Sitto v. Lafler*, 279 F. App'x 381, 382 (6th Cir. 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review"); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent"); *Hoop v. Jackson*, 2015 U.S. Dist. LEXIS 149625, 2015 WL 6735895, at *22 (S.D. Ohio Nov. 4, 2015) ("Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim."); *Carter v. Bradshaw*, 2015 U.S. Dist. LEXIS 133948, 2015 WL 5752139, at *51 (N.D. Ohio Sept. 30, 2015); *Keenan v. Bagley*, 2012 U.S. Dist. LEXIS 57044, 2012 WL 1424751, at n.28 (N.D. Ohio April 24, 2012); *Johnson v. Kelly*, 2015 U.S. Dist. LEXIS 35827, 2015 WL 1298711, at *11 (N.D. Ohio March 23, 2015) (adopting report and recommendation).

*Alvarado v. Ohio State Penitentiary*, No. 3:16-CV-02563, 2020 WL 534169, 2020 U.S. Dist. LEXIS 17261, *38-39 (N.D. Ohio Feb. 3, 2020) (Greenberg, M.J.). Thus, Petitioner's claim is not cognizable. Furthermore, even where actual innocence claims are raised in order to excuse a procedural default or equitably toll an expired statute of limitations, the touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 1933 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 298. Here, Petitioner has not presented this court with any new, reliable evidence.

### IV. Conclusion

For the foregoing reasons, it is recommended that Jackson's Petition be DENIED.

/s/ *David A. Ruiz*
U.S. MAGISTRATE JUDGE

Date: September 15, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**